UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIRRORLITE MIRROR, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>GLASSLESS MIRROR MANUFACTURERS INC.,<br><br>*Defendant*. | Civil Action No. 7:23-cv-03437-PMH<br><br>**REDACTED** |

**JOINT STATEMENT OF MATERIAL FACTS PURSUANT TO RULE 56.1**

## I. DEFENDANT'S STATEMENT OF FACTS AND PLAINTIFF'S RESPONSES

1. Gary Reith, Janet Reith, Richard Powers, and Benito Repollet used to work for a company Hudson Photographic Industries, Inc. d/b/a Mirrorlite Products Inc. (Ex. 1, BR 30(b)(6) 4/1/24 Dep. Tr. at 10:11-15; *Id*. at 11:11-17; Ex. 2, J. Reith 4/3/24 Dep. Tr. at 22:2-7; Ex. 3, RP 30(b)(6) 4/1/24 Dep. Tr. at 8:2-12). **Response:** Admitted.

2. Hudson Photographic Industries, Inc. and affiliated companies filed for bankruptcy and closed in February 2007. (*E.g.*, Ex. 3, RP 30(b)(6) Tr. at 8:18-22). **Response:** Admitted.

3. Hudson Photographic Industries was in the business of manufacturing glassless mirrors under the trademark MIRRORLITE. (*Id.*) **Response:** Admitted.

4. Gary Reith formed and was an owner of Hudson Mirror LLC in March 2007. (Ex. 4, SR 30(b)(6) 4/4/24 Dep. Tr. at 10:9-11; Ex. 1, BR 30(b)(6) Tr. at 11:4-10; Ex. 5, D. Reith 4/2/24 Dep. Tr. at 51:8-10; *Id*. at 15-21). **Response:** Admitted.

5. Richard Powers and Benito Repollet were employed by Hudson Mirror LLC from March 2007 through early August 2008, resigning effective in the first week of August 2008. (Ex. 1, BR 30(b)(6) Tr. at 11:4-10, 14:25-15:3; Ex. 3, RP 30(b)(6) Tr. at 8:23-9:5, 12:20-25). **Response:** Admitted.

6. Glassless Mirror Manufacturers, Inc. ("GMM") was incorporated on July 31, 2008. (Ex. 3, RP 30(b)(6) Tr. at 25:17-20). **Response:** Admitted.

7. GMM moved into its manufacturing facility on August 8, 2008. (Ex. 3, RP 30(b)(6) Tr. at 26:22-25). **Response:** Admitted.

8. GMM is primarily in the business of manufacturing glassless mirrors. (Ex. 3, RP 30(b)(6) Tr. at 7:7-15). **Response:** Admitted.

9. GMM took its first order on August 15, 2008. (Ex. 3, RP 30(b)(6) Tr. at 53:12-54:10 ("So the first product we sold as a LiteMirror was August 15, 2008, and when we send out the invoice,

it's an invoice of LiteMirror.com, which you're buying LiteMirror.")). **Response:** Admitted that GMM took its first order on August 15, 2008, but disputed that this product was sold under the LITEMIRROR trademark. Ex. B; Ex. 1 at 34-35; Ex. 56 at 70-72; Ex. M at 27-30; Ex. 15 at 48 and 90.

10. GMM put "LITEMIRROR" on its invoices next to its abbreviated corporate name, GMM, INC. at least as early as August, 15, 2008. (Ex. 3, RP 30(b)(6) Tr. at 53:12-54:10; Ex. 6, RP 30(b)(6) 4/4/24 Dep. Tr. at 124:2-25; Ex. 7, R. Powers Aff. ¶¶ 8-9 (GMM0004384-4385)). **Response:** Admitted that the term "GMM -Litemirror" appeared on two invoices in 2008 but dispute that such use was trademark use, or that Plaintiff had knowledge of these invoices prior to this litigation. Ex. 7 at GMM 4384; Ex. 56 at 70-72.

11. GMM's website is located at www.litemirror.com and has been accessible since October 2008. (Ex. 1, BR 30(b)(6) Tr. at 33:4-22; Ex. 8, Dep. Ex. GMM-100 (GMM0004278)). **Response:** Admitted.

12. The website located at www.litemirror.com is the only website GMM has ever maintained and www.litemirror.com has always been the URL advertised as the location of GMM's website. (Ex. 9, B. Repollet Aff. ¶¶ 8-9). **Response:** Disputed. Ex. EE.

13. GMM used email addresses with the @litemirror.com domain extension since at least October 2008. (Ex. 9, BR Aff. ¶¶ 10-12 (GMM0004280); Ex. 3, RP 30(b)(6) Tr. at 38:23-39:9; Ex. 10, Dep. Ex. GMM-104 (GMM0002049-2053); *See, e.g.*, Ex. 11, Dep. Ex. GMM-111 at GMM0003001, GMM0003151; Ex. 3, RP 30(b)(6) Tr. at 39:25-41:11). Prior to using the @litemirror.com email addresses, GMM's email address was litemirror@optonline.net. (Ex. 9, BR Aff. ¶ 13). **Response:** Admitted.

14. Beginning in late 2008 early 2009 Rick Powers has at times answered the GMM phones

with "LiteMirror GMM." (Ex. 12, R. Powers 4/4/24 Dep. Tr. at 81:15-24). **Response:** Admitted that this is the witnesses' testimony, and note "at times" is undefined.

15. At least as early as April 2013, GMM's website included product descriptions as follows: "Our LiteMirrors are made from highly reflective film . . ." (Ex. 6, RP 30(b)(6) Tr. at 120:9-121:12; Ex. 13, Dep. Ex. GMM-263 at GMM00004396). **Response:** Admitted, but not on homepage.

16. At least as early as April 5, 2013, the litemirror.com website promoted that "BEYONCE PURCHASED LITEMIRROR." (Ex. 13, Dep. Ex. GMM-263 at GMM0004395; Ex. 6, RP 30(b)(6) Tr. at 129:14-130:4). This same promotion was maintained on the website from at least April 5, 2013 through at least April 29, 2017. (*See* Ex. 15, DP 30(b)(6) 4/1/24 Dep. Tr. at 96:2-97:14; Ex. 13, Dep. Ex. GMM-263 at GMM0004403 (June 2013), GMM0004405 (Oct. 2015), GMM0004407 (June 2016), GMM0004409 (April 2017); Ex. 6, RP 30(b)(6) Tr. at 128:25-133:21). **Response:** Admitted, except noting its minimal prominence placed further down the website.

17. At least as early as April 13, 2013 Defendant's FAQ page of its website at litemirror.com provided numerous frequently asked questions that use LiteMirror to identify GMM's products such as, "How is a LiteMirror made?" "Does a LiteMirror weigh as much as a glass mirror?" (Ex. 13, Dep. Ex. GMM-263 at GMM0004399; Ex. 6, RP 30(b)(6) Tr. at 129:14-25). The same or similar FAQ page with use of LiteMirror to identify GMM's products was maintained on GMM's website through at least September 18, 2017. (Ex. 13, Dep. Ex. GMM-263 at GMM004406 (Oct. 2015); Ex. 6, RP 30(b)(6) Tr. at 133:3-11; Ex. 4, SR 30(b)(6) Tr. at 90:22-91:25; Ex. 7, RP Aff. ¶¶ 10-11, Ex. B (Sept. 2017)). **Response:** Admitted the statements appeared on the FAQ page and not on home page.

18. GMM changed its host for its website in or around late 2017 to Wix. (Ex. 15, DP 30(b)(6)

Tr. at 86:11-13; Ex. 17, D. Powers Aff. ¶¶ 9). GMM's first Wix website went live on or about November 17, 2017. (Ex. 17, DP Aff. ¶¶ 10-13, Ex. A). Since at least that time, LITEMIRROR or LiteMirror.com has appeared on the website either at the center top or at the upper left corner. (Ex. 15, DP 30(b)(6) Tr. at 87:2-15; *see also* Ex. 17, DP Aff. at Exs. B-R (screenshots of www.litemirror.com from 2017-2023). **Response:** Admitted in part, but disputed that since 2017 the term litemirror always appeared as stated in this paragraph. Ex. 1 at 31; Ex. 56 at 95; Ex. F.

19. With the change to Wix as the host of the litemirror.com website, GMM was able to and did set up an e-commerce store with shopping cart capability directly on litemirror.com. (Ex. 18, D. Powers 4/2/24 Dep. Tr. at 9:4-24; *Id.* at 75:7-21). **Response:** Admitted.

20. Around February 2020, GMM updated its website so that LITEMIRROR appeared at the top center of www.litemirror.com (hereafter versions of the website with LITEMIRROR at the top center are referred to as the "Modern Litemirror Website"). (Ex. 17, DP Aff. ¶¶ 28-47, Exs. I-S; Ex. 13, Dep. Ex. GMM-263 at GMM0004410-4417 (2020-2023); Ex. 6, RP 30(b)(6) Tr. at 134:5-25). **Response:** Disputed. Ex. F.

21. In 2011, Hudson Mirror LLC changed its name and company form to become Mirrorlite Mirror, Inc. (*See* Ex. 19, S. Rodriguez 4/1/24 Dep. Tr. at 24:3-23; Ex. 4, SR 30(b)(6) Tr. at 10:9-19). **Response:** Admitted.

22. No intellectual property assets of MirrorLite Products, Inc/Hudson Photographic Industries, Inc. were transferred to Plaintiff. (Ex. 19, S. Rodriguez Tr. at 37:19-38:5). **Response:** Disputed. Ex. 5 at 14 and 31; Ex. 53 at 14; Ex. 2 at 27.

23. Plaintiff knew about GMM at least as early as November 14, 2008. (Ex. 20, Resp. to RFA No. 13). **Response:** Admitted.

24. Plaintiff knew that GMM was marketing glassless mirrors to consumers as early as

November 14, 2008. (Ex. 20, Resp. to RFA No. 17). **Response:** Admitted.

25. Plaintiff, as Hudson Mirror LLC, sent a letter dated November 14, 2008 demanding GMM cease production of glassless mirrors and shut down its website (litemirror.com). (*See* Ex. 21, Dep. Ex. MMI-17 (Dkt. No. 19-1); Ex. 20, Resp. to RFA No. 26 (admitting authenticity)). Among other things, the November 14, 2008 letter stated: "If you do not comply within 10 working days of this notification, I will be forced to take full and swift legal action against your company, its officers, and its employees." (Dkt No. 19-1). **Response:** Admitted, but the letter makes no reference to the term LiteMirror or to any other trademark. Ex. A, D.E. 19-1.

26. Plaintiff knew of Defendant's website at www.litemirror.com before April 1, 2009. (Ex. 20, Resp. to RFA No. 32; *see also* Ex. 20, Resp. to RFA No. 25). **Response:** Admitted, but Plaintiff was not aware Defendant was using the term LiteMirror as a trademark as LiteMirror did not appear on the website, and only appeared as part of an email address. Ex. B; Ex. 4 at 54-56, 62-63, 67, 92; Ex. 19 at 55, 79.

27. Plaintiff's distributor Syclone Corporation d/b/a glasslessmirrors.com believed that when GMM began and was using the domain litemirror.com it could negatively impact Syclone's business because the domain litemirror.com is confusingly similar to the MirrorLite mark and recommended to Hudson Mirror that it protect its trademark. (Ex. 22, A. Auerbach 30(b)(6) Dep. Tr. 36:22-37:11; *Id*. at 69:18-70:7). **Response:** Admitted in part, but disputed that Auerbach testified confusion existed when GMM began or that Auerbach recommended Hudson Mirror protect its trademark when GMM began. Ex. 22 at 36-37 and 69-70.

28. Plaintiff's distributor Syclone Corporation visits the litemirror.com website at least once per year. (Ex. 22, A. Auerbach Tr. 43:15-44:14). **Response:** Admitted, except no evidence in the record as to how long he has been visiting the site once per year. Ex. 22 at 43-44.

29. Plaintiff placed Defendant on written notice of trademark infringement prior to 2010. (Ex. 20, Resp. to RFA No. 48; *see also* Ex. 20, Resp. to RFA No. 49). **Response:** Admitted as to Defendant's use of the MirrorLite trademark, but denied as to the LiteMirror trademark, as Plaintiff was not aware by 2010 that Defendant was using the term LiteMirror as a trademark. Ex. B; Ex. 4 at 54-56, 62-63, 67, 92; Ex. 19 at 55, 79; Ex. A, D.E. 19-1 and 19-2; Ex. 56 at 70-72.

30. Plaintiff's counsel, Collen IP wrote to Defendant on January 26, 2009 demanding among other things that Defendant "refrain from using the MIRRORLITE trademark in connection with your business." (Ex. 4, SR 30(b)(6) Tr. at 50:2-16; Ex. 24, Dep. Ex. MMI-18 (GMM0004015-4018 at GMM0004017)). Among other things, the January 26, 2009 letter also stated: "Furthermore, on July 16, 2008, more than two weeks prior to terminating your employment, you registered the domain www.litemirror.com through Godaddy.com, Inc." and "Our client intends to vigorously defend and enforce its intellectual property rights" and "[f]ailure to comply with these requests will force Hudson Mirror to seek all available legal remedies, including seeking an injunction, all damages related to you're your … misappropriation of Hudson Mirror's Intellectual Property, as well as attorneys' fees, where appropriate." (*id*.). The January 26, 2009 letter provided a definition of "Intellectual Property" that included "trademarks." (*Id*.). **Response:** Admitted, except Plaintiff was not aware in 2009 that Defendant was using LiteMirror as a trademark and therefore the letter did not reference or demand the discontinuation of the LiteMirror trademark. Ex. B; Ex. 4 at 54-56, 62-63, 67, 92; Ex. 19 at 55, 79; Ex. A; Ex. GG at ¶¶ 2-8; Ex. 56 at 70-72.

31. With reference to the January 26, 2009 letter, Ms. Rodriguez confirmed that the use of the MIRRORLITE trademark by Defendant was in GMM's domain name, litemirror.com. ( Ex. 4, SR 30(b)(6) Tr. at 51:12-52:11). **Response:** Disputed. Rodriguez could not confirm the nature of the alleged use of MirrorLite that was being referenced in the January 26, 2009 letter. When asked,

the witness responded "I don't know" and then speculating said, "it could have been the domain name." The letter does not demand anything for LiteMirror. Rodriguez testified that she was not aware that Defendant was using the term LiteMirror as a trademark in 2009 and clarified that LiteMirror was not being referenced in that letter. Ex. 4 at 51-52; Ex. B; Ex. 4 at 54-56, 62-63, 67, 92; Ex. 19 at 55, 79; Ex. A; Ex. GG. at ¶¶ 2-8.

32. Plaintiff's counsel, Collen IP followed up on February 18, 2009 among other things threatening that if Defendant did not "cease any [sic] use" of the MIRRORLITE trademark then [Plaintiff] will proceed with more formal measures." (; Ex. 25, Dep. Ex. MMI-19 (ML000739-743); Ex. 4, SR 30(b)(6) Tr. at 53:3-17). **Response:** Admitted, but letter makes no reference to the LiteMirror trademark. Ex. A.

33. With reference to the February 18, 2009 letter, Ms. Rodriguez again confirmed that the use of the MIRRORLITE trademark by Defendant was in the domain name, litemirror.com. ( Ex. 4, SR 30(b)(6) Tr. at 53:18-54: 9). **Response:** Disputed. This follows the testimony on the preceding two pages where the witness could not confirm what was being referenced with regard to the alleged use of MirrorLite in the 2009 letter. When asked, the witness responded "I don't know." The witness on the same page testified that she was not aware that Defendant was using the trademark LiteMirror in connection with its business in 2009, as clarified in the S. Rodriguez declaration. Ex. 4 at 51-52, 54-56, 62-63, 67, 92; Ex. 19 at 55, 79; Ex. GG at ¶¶ 2-8.

34. Plaintiff, as Hudson Mirror LLC, sent a letter dated April 1, 2009 with a "Re" line of "http://www.litemirror.com - Trade Mark infringement" stating that GMM is claiming to sell authentic Mirrorlite™ brand products, requests proof of purchase, and notes that use of the "'Mirrorlite Products' name" may only be used under license from Plaintiff." (Dkt. 19-2; Ex. 20, Resp. to RFA No. 27; Ex. 26, Dep. Ex. MMI-20). **Response:** Admitted, but the letter does not

reference or make a demand regarding the LiteMirror trademark.

35. Plaintiff's November 14, 2008, January 26, 2009, February 18, 2009, and April 1, 2009 letters were not successful in getting Defendant to stop its business operations, its website or its use of any allegedly infringing marks. (Ex. 5, D. Reith Tr. at 81:22-82:4). **Response:** Plaintiff admits that the letters did not get Defendant to stop its business or the operation of its website. Plaintiff disputes that the letters concern use of the trademark LiteMirror and disputes that Plaintiff was aware that Defendant was using LiteMirror as trademark in 2008 or 2009. Ex. 4 at 54-56, 62-63, 67, 92; Ex. 19 at 55, 79; Ex. B; Ex. 56 at 70-72, 73-77.

36. In the years following the November 14, 2008, January 26, 2009, February 18, 2009, and April 1, 2009 letters, until August 29, 2021, Plaintiff did not take any other actions against Defendant to stop Defendant from using the litemirror.com domain or otherwise infringing on any of Plaintiff's trademark rights. (Ex. 4, SR 30(b)(6) Tr. at 61:15-23). **Response:** Disputed. Ex. FF; Ex. 19 at 78-79.

37. Plaintiff did not pursue the claims of the November 14, 2008, January 26, 2009, February 18, 2009, and April 1, 2009 letters for monetary reasons, namely, Plaintiff did not have the money to keep fighting. (Ex. 5, D. Reith Tr. at 82:5-17). **Response:** Disputed. The claims that Plaintiff did not pursue because of money reasons were unrelated to LiteMirror, but were the claims in the letters regarding misappropriation of the manufacturing materials and proprietary business information that were the subject of these letters ("the manufacturing process, everything to make the mirrors") and the use of the MirrorLite mark that Plaintiff was aware of at that time. Plaintiff was not aware of the Defendant's use of the LiteMirror trademark at this time and the letters did not include a demand regarding the LiteMirror trademark. Ex. 5 at 79; Ex. 4 at 54-56, 62-63, 67, 92; Ex. 19 at 55, 79; Ex. HH at ¶¶ 2-6.

38. Plaintiff's next action to enforce its rights against Defendant was a cease and desist letter from Plaintiff's counsel Collen IP dated August 30, 2021. (Ex. 4, SR 30(b)(6) Tr. at 63:14-22; *Id*. at 64:6-22)). **Response:** Disputed. Ex. FF; Ex. 19 at 78-79.

39. Plaintiff is not aware of any specific consumer that has been confused by the Modern LiteMirror Website. (Ex. 4, SR 30(b)(6) Tr. at 96:7-97:20). **Response:** Disputed. Ex. 4 at 65-66, 87, 93, 95, 102, 106, 109-110, 113-114; Ex. 19 at 75-76, 79-84, 95, 104-105, 161-62, 165-66, 168-71; Ex. 5 at 61-62, 74, 99-100; Ex. M at 14; Ex. 18 at 80-86; Exs. J-L and N-S; Ex. 2 at 44-46; Ex. S at ¶¶ 3-6.

40. Plaintiff claims that it was not aware of the extent of Defendant's use of the LITEMIRROR mark in connection with the sale of glassless mirrors, reciting knowledge only of Defendant's use of the litemirror.com domain. ( Ex. 4, SR 30(b)(6) Tr. at 67:9-25). **Response:** Admitted, except noting it is vague as to timing, saying "several years."

41. Plaintiff and its employees associated LITEMIRROR with Defendant and often referred to Defendant as LITEMIRROR from 2008, well before the 2021 letter. **Response:** Disputed, but Plaintiff admits that prior to August 30, 2021, some of its employees used the term LiteMirror to refer to Defendant and/or Defendant's litemirror.com website, but Plaintiff denies that it had been aware since 2008 that Defendant was using this term as a trademark. Ex. B; Ex. 4 at 54-56, 62-63, 67, 92; Ex. 19 at 55, 79.

41-a. Gary Reith received an email on September 10, 2008 from GMM via the address litemirror@optimum.net and with a contact address of WLangsam@litemirror.com. (Ex. 28, Dep. Ex. MMI-22 (ML000057); Ex. 4, SR 30(b)(6) Tr. at 68:2-69:12). **Response:** Plaintiff admits that Mr. Reith received the email referenced in Paragraph 41(a).

41-b. In a March 5-6, 2009 email exchange between Gary Reith and Adam Auerbach, Plaintiff's

distributor, the subject line read "URGENT FOUND ON LITEMIRROR!" in which Plaintiff testified LITEMIRROR referred to Defendant. (Ex. 29, Dep. Ex. MMI-23 (ML000117-118); Ex. 4, SR 30(b)(6) Tr. at 69:21-70:21) **Response:** Plaintiff admits that the email referenced in Paragraph 41(b) is accurately quoted, but disputes that the reference is to Defendant. The reference is to Defendant's website as evidenced by the "Found On" language.

41-c. In a March 13, 2009 email Mr. Auerbach sent Gary Reith a link to the litemirror.com website and put "Lite Mirror 'Spring' Desperation Sale as the subject line. (Ex. 30, Dep. Ex. MMI-24 (ML000115); Ex. 4, SR 30(b)(6) Tr. at 72:5-17; *Id*. at 73:5-23 (Plaintiff was "aware of some of [GMM's] LiteMirror use" and admitting LiteMirror referred to GMM.)). **Response:** Plaintiff admits that that the email has a link to litemirror.com and this subject line, but disputes to the extent it is being interpreted to state Plaintiff was aware of Defendant's use of the trademark LiteMirror in March, 2009. Moreover, the witness could not authenticate the email or its content, and the statement is vague. Ex. B; Ex. 4 at 54-56, 62-63, 67, 92; Ex. 19 at 55, 79.

41-d. Mr. Auerbach sent another email on March 17, 2009 with the subject line "Check this out" to Gary Reith with a link to Defendant's website. (Ex. 31, Dep. Ex. MMI-25 (ML000113); Ex. 4, SR 30(b)(6) Tr. at 73:24-74:24 (Plaintiff understood litemirror.com to be a link to GMM's website). **Response:** Admitted that Mr. Auerbach sent this email.

41-e. In an email dated April 24, 2009, Mr. Auerbach sent an email to Gary Reith that stated "almost lost an order to LiteMirror." (Ex. 32, Dep. Ex. MMI-26 (ML000107); Ex. 4, SR 30(b)(6) Tr. at 75:23-76:17 (LiteMirror refers to Defendant)). **Response:** Admitted that Mr. Auerbach sent this email.

41-f. In an email dated April 25, 2009, Mr. Auerbach sent an email to Gary Reith with the subject line "Another Litemirror dealer?" (Ex. 33, Dep. Ex. MMI-27 (ML000105); Ex. 4, SR 30(b)(6) Tr.

at 76:18-77:20 (LiteMirror refers to Defendant)). **Response:** Admitted that Mr. Auerbach sent this email.

41-g. In a May 20, 2010 email Gary Reith wrote "Added note: Did some observing at Litemirror factory. Saw a Rose Brand truck picking up 18 pieces 4 by 6 and one box of 2 by 2. Doesn't look like they're out of business yet. What can we do to stop them?!?" (Ex. 34, Dep. Ex. MMI-28 (ML000129-131) at ML000130; Ex. 4, SR 30(b)(6) Tr. at 77:21-79:24 (LiteMirror could refer to Defendant)). **Response:** Admitted that Reith sent this email.

41-h. In a September 7, 2010 email, Mr. Auerbach wrote to Gary Reith "Took another one away from litemirror." (Ex. 35, Dep. Ex. MMI-29 (ML000125); Ex. 4, SR 30(b)(6) Tr. at 80:16-81:18 (LiteMirror refers to Defendant)). **Response:** Admitted that Mr. Auerbach wrote this email.

41-i. Dwayne Reith understood Litemirror and Glassless Mirror Manufacturers to be one in the same in 2010. (Ex. 36, DR Dep. Ex. 2 (ML000137-ML000140); Ex. 5, D. Reith Tr. at 55:5-60:15). **Response:** Admitted that in the context of the document shown to the witness, Mr. Reith testified that the reference to LiteMirror and Glassless Mirror Manufacturers were one and the same.

41-j. In a March 11, 2011 email Mr. Auerbach wrote "Just in case LiteMirror goes out of business." and testified what he meant by that is that if GMM goes out of business GMM's website goes down too. (Ex.37, AA Dep. Ex. 9 (GMM0002402); Ex. 22, A. Auerbach Tr. at 55:9-24; *Id.* at 56:21-25, 57:17-19). **Response:** Admitted that Auerbach wrote this email.

41-k. In a September 25, 2011 email responding to a question about whether a specific dealer was one of Plaintiff's, Gary Reith responded "No. They belong to litemirror.com." (Ex. 38, Dep. Ex. MMI-30 (ML000147); Ex. 4, SR 30(b)(6) Tr. at 81:19-82:25 (Litemirror.com refers to Defendant)). **Response:** Admitted that Reith responded as quoted.

41-l. Stephanie Rodriguez referred to GMM as LITEMIRROR on or before June 12, 2012. (Ex.

39, SR Dep. Ex. 4 (GMM0002374); Ex. 19, S. Rodriguez Tr. at 63:5-65:2). At the time of that writing Ms. Rodriguez believed GMM to be a competitor of Plaintiff. (Ex. 19, S. Rodriguez Tr. at 66:22-67:13). **Response:** Admitted.

41-m. In a 2018 email exchange with a representative of Rehabmart, Mr. Auerbach inquired why Rehabmart was looking to leave "LiteMirror as [its] supplier of glassless mirrors." Ex. 22, A. Auerbach Tr. at 66:4-68:14 (noting that Rehabmart is "strictly a LiteMirror dealer"). **Response:** Admitted that Auerbach sent this email.

42. Plaintiff admits that there was confusion between it and GMM even prior to 2017. (Ex. 5, D. Reith Tr. at 100:13-101:2). **Response:** Plaintiff admits that certain uses of the MirrorLite mark by Defendant were likely to cause confusion prior to 2017, but the evidence cited in this paragraph does not identify any instance of confusion prior to 2017. Ex. 5 at 100-101 (noting it was in the range of 2017, not prior to 2017).

43. Plaintiff's dealer, glasslessmirror.com, testified that "Just the domain name alone is extremely confusing. They just swapped the words." (Ex. 22, A. Auerbach Tr. at 69:18-70:7). **Response:** Admitted.

44. Plaintiff's dealer, glasslessmirror.com, testified that there was "Always confusion." (Ex. 22, A. Auerbach Tr. at 70:17-24). **Response:** Disputed. The cited testimony is that recently there is always confusion. Ex. 22 at 70.

45. There is no admissible (i.e., non-hearsay) evidence of actual confusion before or after Defendant's change to the Modern Litemirror Website. **Response:** Disputed and subparagraphs 45-a to 45-i are disputed. See Response to ¶ 39 above, incorporated herein for 45(a)-45(i).

45-a. Ex. 41, Dep. Ex. MMI-35 (ML000029) (re Dan Clair); Ex. 4, SR 30(b)(6) Tr. at 100:9-21 (same; no actual confusion between Plaintiff and GMM/hearsay); Ex. 19, S. Rodriguez Tr. at 164:22-165:5 (same). **Response:** see above.

45-b. Ex. 42, Dep. Ex. MMI-36 (ML000248-249) (re Barry Medics); Ex. 4, SR 30(b)(6) Tr. at 104:5-13 (same; hearsay) **Response:** see above.

45-c. Ex. 43, Dep. Ex. MMI-37 (ML000021-24) (re Democracy Prep Public Schools/Jordan Farr/Brian Duran); Ex. 44, SR Dep. Ex. 10 (ML000037-39) (same); Ex. 4, SR 30(b)(6) Tr. at 105:20-23, 108:23-109:4 (same; hearsay); Ex. 19, S. Rodriguez Tr. at 148:9-149:19 (same; hearsay); Ex. 22, A. Auerbach Tr. at 71:13-73:15; *Id*. at 73:25-74:11 (not sure what triggered the misunderstanding with Democracy Prep Public Schools); *see also* Ex. 70 (copy of check). **Response:** see above.

45-d. Ex. 46, Dep. Ex. MMI-38 (ML000025-26) (re Bill Nye); Ex. 4, SR 30(b)(6) Tr. at 109:22-111:2 (same; no actual confusion/hearsay) **Response:** see above.

45-e. Ex. 47, Dep. Ex. MMI-39 (ML000127) (re Paula Roth); Ex. 4, SR 30(b)(6) Tr. at 112:15-114:4 (same/hearsay). **Response:** see above.

45-f. Ex. 48, Dep. Ex. MMI-40 (ML000270) (re Vocus); Ex. 4, SR 30(b)(6) Tr. at 115:20-116:10 (same/hearsay). **Response:** see above.

45-g. Ex. 49, Burris Dep. Ex. 7 (ML00027-28); Ex. 50, A. Burris Dep. Tr. at 23:13-25:7 (misdirected email/no actual confusion); SR Dep. Ex. 8 (ML000027-28) (re VDC): Ex. 19, S. Rodriguez Tr. at 136:20-143:10 (same/hearsay). **Response:** see above.

45-h. Ex. 19, S. Rodriguez Tr. at 86:6-91:2 (re phone calls/hearsay); *Id*. at 92:10-93:25 (same). **Response:** see above.

45-i. Ex. 51, SR Dep. Ex. 9 (ML000033-34) (re Chris Moran); Ex. 19, S. Rodriguez Tr. at 145:24-146:15 (same; hearsay); Ex. 52, AA Dep. Ex. 16 (ML00044-455) (re Chris Moran); Ex. 22, A. Auerbach Tr. 77:4-81:10 (same; hearsay). **Response:** see above.

46. Dwayne Reith has testified that he has not spoken with any customers that were allegedly confused (Ex. 5, D. Reith Tr. at 101:3-6; *Id*. at 99:14-100:6 ("Just what I heard in the office … But just conversations that I would hear the secretaries and Janine and Stephanie talking to several different customers.")). **Response:** Admitted.

47. Plaintiff admits that it suffered damage as a result of Defendant's alleged infringement prior to April 1, 2009. (Ex. 20, Resp. to RFA No. 46; *see also* Ex. 20, Resp. to RFA No. 47). **Response:** Plaintiff admits with regard to certain used by Defendant of the MirrorLite (not LiteMirror) trademark prior to April 1, 2009.

48. Plaintiff believes it was harmed by Defendant as soon as Defendant opened their doors. (Ex. 5, D. Reith Tr. at 102:12-19). **Response:** Plaintiff admits this statement, and Plaintiff's 2008 and 2009 letters list some of the reasons for the harm, but that these reasons were unrelated at that time to trademark use of LiteMirror. Ex. A.

49. Plaintiff and Defendant have been marketing and promoting their respective goods and services to the same category of customers since at least April 1, 2009. (Ex. 20, Resp. to RFA No. 21; *see also* Ex. 20, Resp. to RFA No. 22). **Response:** Admitted, except note that the manner in which they have been marketed and promoted has changed.

50. Plaintiff and Defendant have both marketed and promoted glassless mirror products on the Internet since April 1, 2009. (Ex. 20, Resp. to RFA No. 40; *see also Id*. at RFA No. 41). **Response:** Admitted.

51. Plaintiff and Defendant have been offering glassless mirror products through the same or related trade channels since April 1, 2009. (Ex. 20, Resp. to RFA No. 38; *see also* Ex. 20, Resp. to RFA No. 39 (42-43 seem to be duplicative)). **Response:** Admitted that Plaintiff's trade channels have been related to Defendant's trade channels since April 1, 2009.

52. Gary Reith passed away in 2019. (Ex. 53, DR 30(b)(6) 4/4/24 Tr. at 17:12-15). **Response:** Admitted.

53. Witnesses currently available from Plaintiff do not know whether Hudson Mirror LLC had written confidentiality agreements or non-competition agreements with Richard Powers or Benito

Repollet. (Ex. 53, DR 30(b)(6) Tr. at 16:10-17). **Response:** Admitted, but neither party is alleging that there was a written confidentiality or non-compete agreement.

54. Gary Reith is the only person with knowledge of certain critical facts that will be relevant should this case proceed. (*E.g.*, Ex. 4, SR 30(b)(6) Tr. at 20:16-21:12 (Gary Reith would know why the first use date listed in Plaintiff's trademark application was August 4, 2008); Ex. 67 (trademark registration); Ex. 4, SR 30(b)(6) Tr. at 49:7-20, Ex. 21, Dep. Ex. MMI-17 (Dkt. 19-1) (No one at Plaintiff today would know which web address was referenced in letter written by Gary Reith on behalf of Plaintiff in 2008); Ex. 4, SR 30(b)(6) Tr. at 52:23-53:2 (Gary Reith was the representative at Plaintiff who was in communication with Plaintiff's counsel, Collen IP, in 2009); Ex. 4, SR 30(b)(6) Tr. at 63:23-64:5 (Gary Reith would be person with knowledge as to why no action was taken against Defendant following the 2008-2009 letters up to 2020); Ex. 2, JR Tr. at 64:9-19 (Gary Reith would have known Plaintiff's position on GMM's use of LITEMIRROR in 2014)). **Response:** Disputed that there is evidence that only Gary Reith would have knowledge of all these facts, and disputed that these are critical facts. Specifically, (1) First use date in the application: is not critical because Plaintiff has provided knowledgeable testimony about its actual first use date from several witnesses. Moreover, as Defendant has conceded infringement for summary judgment purposes, Plaintiff's first use date is irrelevant. Ex. 4 at 11-12, 15, 16, 20, 21, 31-32; Exs. H and I; Ex. 19 at 175-76; Ex. 5 at 41-45; Ex. 2 at 49, 55-57. D.E. 54 at ftn. 1; (2) Web address in 2008 letter: Plaintiff's 30b6 witness testified that the 2008 letter referred to Defendant's website; also disputed that this is a critical fact as Plaintiff does not dispute it was aware of the litemirror.com domain name at least as early as 2009. Ex. 4 at 49; Ex. A, D.E. 19-2; (3) Communications with counsel: are privileged and would not be discoverable even if Mr. Reith was available; (4) Knowledge of Defendant's allegation that no action was taken: several other

witnesses have already testified regarding this subject matter. Ex. 4 at 54-56, 62-63, 67, 92, 94-95, 97; Ex. 19 at 55 and 79, 103-06, 120-21, 184; Ex. 5 at 15-16, 74-75; Ex. B; (5) Mr. Reith would have known Plaintiff's position on GMM's use: the witness already identified another witness who may have this information. Ex. 2 at 64.

[redacted] **Response:** Admitted, except as to the term "delay," as Plaintiff was not aware of Defendant's trademark use. See Response to No. 35 above.

[redacted] **Response:** Admitted.

57. Benito Repollet registered litemirror.com, along with several other domain names while he was employed at Hudson Mirror. (Ex. 3, RP 30(b)(6) Tr. at 26: 4-14). **Response:** Admitted.

58. Mr. Repollet's decision to register litemirror.com was based on the idea that glassless mirrors were lightweight mirrors, so, in short "lite" mirrors. (Ex. 1, BR 30(b)(6) Tr. at 19:7-12). **Response:** Disputed. Defendant was aware of Plaintiff's MirrorLite Mark. Ex. 4 at 11-12, 15, 16, 20, 21, 31-32; Exs. H and I; Ex. 19 at 175-76; Ex. 5 at 41-45; Ex. 2 at 49, 55-57.

59. Most of the domain names registered by GMM are not, and were never, linked to any GMM website. (*See* Ex. 55, Dep. Ex. GMM-13 (GMM0004011); Ex. 56, BR 30(b)(6) 4/3/24 Dep. Tr. at

60:18-61:2; *Id*. at 96:17-102:13). Mirrorliteproducts.com was linked to the GMM litemirror.com website until GMM counsel advised that it be disabled in 2023. (*Id*. at 95:22-96:5; Ex. 1, BR 30(b)(6) Tr. at 31:22-32:16). **Response:** Admitted.

60. Mr. Repollet registered mirrorliteproducts.com because that was the company he used to work for, i.e., Mirrorlite Products Inc. a/k/a Hudson Photographic Industries Inc.. (Ex. 56, BR 30(b)(6) Tr. at 61:19-62:11). Other domains he registered for similar reasons, still others were simply suggested by the registrar and they were available. (*See Id*. at 62:12-64:2; Ex. 1, BR 30(b)(6) Tr. at 28:3-10; *Id*. at 29:3-19; Ex. 69). **Response:** Disputed. Mirrorliteproducts.com, Hudsonmirrorlite.com, mirrorlitearenamirrors.com, and gomirrorlitearenamirrors.com with were registered in bad faith and with knowledge of Plaintiff's federally registered MIRRORLITE trademark. (Ex. M at 13); see response to No, 58 above; Ex. 1 at 24; Ex. 56 at103; Ex. M at 10-12.

61. Mr. Powers and Mr. Repollet were unaware of any use by Hudson Mirror of the mark MIRRORLITE during their time working for Hudson Mirror in 2007-2008. (Ex. 3, RP 30(b)(6) Tr. at 32:23; Ex. 1, BR 30(b)(6) Tr. at 18:10-24). **Response:** Disputed. See, Resp. to No. 58 above.

62. Mr. Powers and Mr. Repollet did not have confidentiality agreements with Hudson Mirror LLC. (Ex. 9, Repollet Aff. ¶¶ 5-7; Ex. 7, RP Aff. ¶¶ 5-7). **Response:** Admitted.

63. Mr. Powers and Mr. Repollet did not have non-competition agreements with Hudson Mirror LLC. (Ex. 9, BR Aff. ¶¶ 5-7; Ex. 7, RP Aff. ¶¶ 5-7). **Response:** Admitted.

64. Mr. Powers did not take any designs, technology, customer lists, pricing or cost information, vendor or manufacturing contracts, or any trademarks when he left Hudson Mirror LLC. (Ex. 3, RP 30(b)(6) Tr. at 23:23-25:9, 26:15-21). **Response:** Disputed. Ex. 5 at 71-73, 78-79; Ex. HH at ¶¶ 2-6.

65. GMM did not reach out to Plaintiff's customers, but instead did its own research and outreach to find distributors. (Ex. 3, RP 30(b)(6) Tr. at 41:12-43:14). **Response:** Disputed. *Id.*

66. Mr. Repollet and Mr. Powers started GMM in August 2008 they realized needed a short name and it was then that Mr. Repollet remembered that he had registered litemirror.com. (Ex. 1, BR 30(b)(6) Tr. at 22:2-21). **Response:** Disputed. Defendant registered litemirror.com while planning their new company while still employed with, and owing a duty to, Plaintiff. Ex. 1 at 16; and see Resp. to No. 58 above.

67. GMM may have used the term MIRRORLITE as a Google Ad Word in 2008-2009 because Mr. Powers and Mr. Repollet worked for MirrorLite Products and when the company went bankrupt people were still looking for the MirrorLite Products' product. (Ex. 15, DP 30(b)(6) Tr. at 84:23-85:5). **Response:** Admitted as to use of AdWords, but disputed because Defendant knew that this was the Plaintiff's trademark at that time. Resp. to No. 58 above.

68. Mr. Repollet and Mr. Powers did not know of any use of MIRRORLITE by Plaintiff during the years 2007-2008. (Ex. 1, BR 30(b)(6) Tr. at 18:10-24; Ex. 3, RP 30(b)(6) Tr. at 31:25-32:8; Ex. 66). **Response:** Disputed. See, Resp. to No. 58 above.

69. GMM never used the term MIRRORLITE as a trademark in connection with its business. (Ex. 3, RP 30(b)(6) Tr. at 37:15-38:6). **Response:** Disputed. Ex. 15 at 84-85; Ex. E; and Defendant used the term mirrorlite in bad-faith. Ex. EE.

70. GMM did not want to be associated with the bankrupt company Mirrorlite Products, Inc. (Ex. 3, RP 30(b)(6) Tr. at 98:6-99:7; *Id.* at 100:15-101:8; Ex. 10, Dep. Ex. GMM-104 (GMM0002049-2053)). **Response:** Disputed, Ex. GG at Ex. A.

## II. PLAINTIFF'S STATEMENT OF FACTS AND DEFENDANT'S RESPONSES

1. As Defendant has conceded trademark infringement for purposes of summary judgment,

all of the relevant Second Circuit likelihood of confusion trademark infringement facts under *Polaroid* should be deemed to favor Plaintiff's position for summary judgment, namely: (a) Plaintiff's MirrorLite mark is inherently and commercially strong (Ex. G; Ex. 2 at 55-56); (b) the parties' MirrorLite and LiteMirror marks are highly similar, and Defendant has used the identical, counterfeit, MirrorLite mark; (c) the parties products are identical (Ex. 12 at 5-6; Ex. 6 at 48-50); (d) any gap between the parties has already been bridged as they sell identical products and are competitors (*Id.*); (e) the evidence of actual confusion supports infringement (Resp. to Def. St. No. 39); (f) Defendant adopted the LiteMirror and MirrorLite marks in bad faith (Pl. Facts at ¶ 20); (g) the quality of the Defendant's product is inferior to Plaintiff's product (Ex. 5 at 95-97; Ex. 22 at 84-85; Ex. 19 at 54-55); (h) buyer sophistication is very low (Ex. 12 at 5-6; Ex. 15 at 59; Ex. 18 at 34; Ex. 6 at 65). D.E 54 at ftn. 1. **Response**: Object as legal conclusions: no response required; (a) denied, TM registration, labels do not show strength (b) denied, no evidence cited, not counterfeit; (c) and (d) admit both sell glassless mirrors; (e) denied (SOF42-46); (f) denied (SOF57-70); (g) denied Resp. PSOF 22, SR1 55:16-18; (h) admit as to some consumers, denied as to all (e.g., Ex. 50, Burris Dep. 15:4-9; SR 129:22-131:8, 133:7-25).

2. When Defendant first launched its website in 2008 and for several years thereafter, the only use of LiteMirror on the home page was in an email address. Ex. B; Ex. 1 at 34-35; Ex. 56 at 70-72. **Response:** Admit LiteMirror appeared on home page in an email address since 2008. Admit LiteMirror appeared in URL on every page since 2008. Denied as to dates after 2012. *See* SOF16, 18 (uses of LiteMirror on website).

3. Plaintiff did not become aware that Defendant was using the term LiteMirror as a trademark until sometime after 2017. Ex. 4 at 54-56, 62-63, 67, 92; Ex. 19 at 55, 79; Ex. B; Ex. 56 at 70-72. **Response**: Denied. *See* SOF23-34, SOF41-41m; Ex. 58, GMM3989-90, JRieth Ex. 2.

4. Prior to November, 2017, the featured name on Defendant's website was GLASSLESS MIRROR MANUFACTURERS combined with a logo comprising three geometric shapes, and did not use the term LiteMirror. Ex. B; Ex. 18 at 8 and 77-79, 25; Ex. 17 at ¶ 10 (new website first published 11/17/2017). **Response**: Admit that Glasses Mirror Manufacturers, Inc. and the logo were on the website; denied that the website did not use the term LiteMirror prior to 2017. SOF11-12,16-17.

5. Defendant launched a redesigned website on November 17, 2017, and in 2020 featured the term LiteMirror in the header of the website, and has been using a website with LiteMirror in the header since that time and it also added several new features in 2017 to the website. Ex. 17 at ¶¶ 10-49 and exhibits thereto; Ex. 15 at 48 and 90 ("we really branded it in 2017 full force") Ex. 18 at 8 (in 2017 Defendant's website "needed a whole revamp"); Ex. 18 at 9 (2017 modifications to website added, for the first time, ecommerce capabilities and shopping cart). **Response**: Admit updated website launched in Nov. 2017 with LiteMirror featured at the top since (SOF18); admit shopping cart feature added in 2017; "several new features" unsupported and undefined.

6. Part of the reason Defendant made the decision in 2017 to modify its website and thereafter emphasize the term LiteMirror instead of GLASSLESS MIRROR MANUFACTURERS was because customers were confusing Defendant with another entity that operated a website at GlasslessMirror.com. Ex. M at 27-30 ("we have to go by LiteMirror because Glassless Mirror the name it was sending to someone else"). **Response**: Denied. Incorrect citation. Admit Repollet provided cited quote but it was related to company name not website. *See* Resp. PSOF 2.

[redacted]

[redacted]

8. Within the last two to five years, Defendant increased its presence on social media, including adding new platforms to promote its business. Ex. 18 at 31. **Response**: Denied. Cited testimony is in connection with advertising on social media not presence.

9. In 2017 Defendant expanded its market to reach new customers. Ex. 18 at 61. **Response**: Admit D. Powers said "We tried looking for another application for the mirrors." Ex. 18, DP1 61:11-12.

10. Defendant's LiteMirror mark is the same as Plaintiff's MirrorLite mark except the words "Mirror" and "Lite" are swapped. Ex. 63 at Nos. 35-36. **Response**: Admit both contain "mirror" and "lite" but in different order, Ex. 63, at RFA 35; denied as to capitalization, Ex. 63, at RFA 36.

11. Plaintiff and Defendant sell identical types of products, namely, glassless mirrors. Ex. 12; Ex. 2 at 50. **Response**: Admit.

12. Plaintiff and Defendant are competitors. Ex. 6 at 48-50; Ex. M at 28-29. **Response**: Admit.

13. Plaintiff's owner registered Defendant's domain name litemirror.com while still employed by Plaintiff (or its predecessor). Ex. 1 at 16. **Response**: Denied. *See* SOF 57.

14. Defendant knew Plaintiff was using its MirrorLite trademark since 2007. Ex. 2 at 55-58. **Response**: Denied. Cited evidence does not support fact. *See* SOF 68.

15. Plaintiff placed Defendant on notice of its claim to ownership of the MirrorLite trademark at least as early as 2009 and demanded Defendant not use MirrorLite. **Response**: No evidence cited. Admit a letter was sent in 2009, *see* SOF 30.

16. Despite knowledge of Plaintiff's MirrorLite trademark, Defendant in bad faith sought to interfere with Plaintiff's rights in the MirrorLite mark, and sow consumer confusion, including by registering domain names with MirrorLite, using those domain names to unsuspectingly redirect consumers to its own website, advertising those domain names on its website, and using keywords that included the MirrorLite trademark. *See* Pl. Stat. Nos. 17- 18 below. **Response**: Legal conclusions require no response. Otherwise denied. *See* SOF 57-61; Resp. to PSOF 17-22.

17. Defendant registered domain names that included Plaintiff's MirrorLite trademark: **Response**: Admit that each domain name was registered – denied as stated below.

a. HudsonMirrorLite.com Ex. 1 at 20. Defendant admitted it was not fair to register HudsonMirrorLite.com when that was Plaintiff's name at that time (Hudson Mirror who also was his former employer). Ex. 1 at 24. **Response**: Denied. B. Repollet testified that he did not think it was fair, at time of deposition, to register the domain name knowing that his former employer was named Hudson Mirror LLC. BR6 24:15-18. Admit that when he registered the domain he was thinking about the Hudson River and MirrorLite Products his prior employer. Ex. 56, BR6 63:5-19).

b. MirrorLiteProducts.com Ex. 1 at 25, 30-31, Ex. D; Ex. EE (which first linked to a page where the domain name was advertised and then linked to Defendant's website and continued to redirect to Defendant's website even after this lawsuit was filed) **Response**: Denied. No evidence GMM created ML582, not authenticated. Linked at time of registration. Ex. 1, BR6 31:16-32:6.

c. MirrorLiteArenaMirrors.com Ex. M at 21; Ex. 1 at 27-28 **Response**: Admit.

d. GoMirrorLiteArenaMirrors.com Ex. M at 21; Ex. 1 at 27-28. (sowing further confusion by adopting "gomirrorlite" – a term used for Plaintiff's website) **Response**: Denied that the domain was used or that confusion resulted. *See* SOF 59-60; Ex. 56, BR6 101:24-102:13 (never

linked).

18. Defendant used the used the following keywords that each include Plaintiff's MirrorLite trademark: (a) MirrorLite Glassless Mirrors (Ex. V at GMM 441); and (b) MirrorLite (Ex. V at GMM 720); and (c) MirrorLite mirrors, Ex. V at GMM 3251 (showing LM's use of mirrorlite mirrors as keyword was in the top most clicks for its keywords). Ex. M at 4-6 and Ex. E. **Response**: (a) admitted; (b) denied (evidence does not show use); (c) admitted.

19. Defendant admitted it had no right to use competitor's name in a Google Ad Words campaign. Ex. M at 10-11. **Response**: Denied. Repollet provided his current understanding about GMM's ability to use competitor names, not his understanding at the time when he had no concerns about using his former employer's name (i.e. Mirrorlite Products, Inc.). Ex. 57, BR 7/11 Decl.

20. Defendant's efforts to interfere with Plaintiff's MirrorLite mark and increase confusion between the parties' respective branding, were in bad faith and done for an improper purpose: **Response**: States legal conclusions to which no response is required. No admissible evidence of specific instances of confusion. *See* SOF39, 45; JRDecl. fails to provide detail. Denied. *See* below.

a. Ex. DD ("I took MirrorLiteGlasslessMirror.com to piss [Plaintiff] off") and (agent responding "I also got MirrorLiteGlasslessMirrors.com") **Response**: Denied. Mr. Gutschke/Gtech is not an agent. *See* Resp. to PSOF 21. Documents not authenticated in 20a, c, h, f, i, k.

b. Ex. 12 at 53-55 (Defendant admitting it directed others to register domain names containing Plaintiff's MirrorLite trademark.) **Response**: Denied. Not "directed" (Ex. 12, RP1 54:13-55:9).

c. Ex. X (Defendant's sales agent informing Defendant that he is running paid advertisements for MirrorLite, MirrorLite Glassless, MirrorLite Glassless Mirrors, MirrorLite Mirrors, and indicating he thought this was funny by adding "lol.") **Response**: Denied; not agent (*see* Resp. to PSOF 21).

d. Ex. 6 at 97-98 (admitting they found these attacks on Plaintiff's MirrorLite mark funny – saying Benito was "giggling" when he would refer to registering the Plaintiff's trademarks.) **Response**: Denied. Ex. 3, RP6 at 97:18-22 ("Q. Why does he come in giggling? A. Because Benito endured 16 years of abuse. If Benito sees something that he thinks he can grab, like I don't even know anymore, he does it. Q. Meaning a domain name? A. Yes").

e. Ex. BB (Defendant's agent referencing using the MirrorLite mark and saying "I'm just having some fun. They might have me legally and pursue it, or they will back off." In response, Defendant directs its agent to obtain the domain name for MirrorLiteGlasslessMirror.com and the agent reported back that he followed Defendant's instructions and bought MirrorLiteGlasslessMirror.com indicating he is getting them "to make two awesome MirrorLite websites.") **Response**: Denied. Not an agent, *see* Resp. to PSOF 21; not directed; same instance as 20b, see above Response. Incomplete document cite.

f. Ex. AA (Defendant's agent advising Defendant that he was taking action to try to attack Plaintiff's rights in the MirrorLite Mark, forcing Plaintiff to incur costs to defend this attack, and admitting that he was just doing all of this for bad faith purposes, namely by boasting that "I am having too much fun."); Ex. FF. **Response**: Denied. Not an agent, *see* Resp. to PSOF 21; third-party distributor's actions cannot be imputed to GMM; no bad faith.

g. Ex. W (Defendant instructing its agent that "If you really want to piss [Plaintiff or its agent] off state mirrorlite comes from Asia. Not american made.") **Response**: Denied. Not agent, *see* Resp. to PSOF 21. Incomplete document cite. Ex. 12, RP1 (56:25-57:20).

h. Ex. CC (Defendant's agent telling Defendant "Even if I don't get to use the [MirrorLite] term in the long run, it's been fun making him freak out.") **Response**: Denied. Not an agent, *see* Resp. to PSOF 21. Incomplete document cite.

i. Ex. U (Defendant encouraging agent: "great plan" to force Plaintiff to expend money and resources to defend against the agent's attacks on Plaintiff's MirrorLite trademark) **Response**: Denied. Incomplete document cite; not an agent, Resp. PSOF 21.

j. Ex. 6 at 91-92 (coordinating with agent to register MirrorLite Mark "to create problems" for Plaintiff.) **Response**: Denied. Ex. 3, RP6 91:25-92:11 ("Q. Did he advise you …"). Not an agent, *see* Resp. to PSOF 21.

k. Ex. Y (After encroaching on Plaintiff's rights in its MirrorLite mark, Defendant's agent instructs Defendant to: "Google mirrorlite glassless mirrors….lol….you know that will piss them off. Not ahead of them, but right below them.") **Response**: Denied. Not an agent, Resp. PSOF 21; "encroaching on Plaintiff's rights in its mark" not established.

l. Even at its deposition, Defendant still believes that encroaching on Plaintiff's trademark rights and sowing consumer confusion is a joke, insisting that the Court reporter record his laughter on this subject. Ex. 12 at 24-25 ("Put on there, I laughed again"); Ex. 6 at 97-98 (referring to giggling after registering domain names that include Plaintiff's MirrorLite trademark). **Response**: Denied as to characterization; contains legal conclusions requiring no response.

21. GTech Fitness (Scott Gutschke) is Plaintiff's agent. Ex. 12 at 25; Ex. 6 at 93-94. **Response**: Denied. Ex. 12, RP1 24:19-22, 25:8-10; 86:4-12 ("he's a distributor of ours."); *see also Id.* at 21:4-26:24); Ex. 3, RP6 93:18-94:10 (Gtech is distributor not agent).

22. Plaintiff's and not Defendant's products are UL® certified. Ex. 5 at 95-97. **Response**: Admit Plaintiff represents its products are UL certified; GMM' products meet ASTM E84; Ex. 61, GMM3981.

Dated: September 27, 2024

Respectfully submitted,


*/s/ Jeffrey A. Lindenbaum*______
Jeffrey A. Lindenbaum
James R. Hastings
Jess M. Collen
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
80 South Highland Avenue
Ossining, New York 10562
Phone: (914) 941-5668
jlindenbaum@rothwellfigg.com
jhastings@rothwellfigg.com
jcollen@rothwellfigg.com

*Attorneys for Plaintiff Mirrorlite Mirror, Inc.*

*/s/ Robert M. Isackson*________
Robert M. Isackson
Peter S. Sloane
Lori Cooper
Tatsuya Adachi
LEASON ELLIS LLP
One Barker Avenue
White Plains, New York 10601
Phone: (914) 288-0022
isackson@leasonellis.com
sloane@leasonellis.com
cooper@leasonellis.com
adachi@leasonellis.com
lelitdocketing@leasonellis.com

*Attorneys for Defendant Glassless Mirror Manufacturers Inc.*