UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIRRORLITE MIRROR, INC.,

                Plaintiff,

-against-

GLASSLESS MIRROR MANUFACTURERS, INC.,

                Defendant.

**OPINION AND ORDER**

23-CV-03437 (PMH)

PHILIP M. HALPERN, United States District Judge:

Mirrorlite Mirror, Inc. ("Plaintiff" or "Mirrorlite Mirror") commenced this action on April 25, 2023 (Doc. 1) and filed its Amended Complaint on June 14, 2023 (Doc. 15, "AC"), asserting trademark infringement claims against Glassless Mirror Manufacturers Inc. ("Defendant" or "GMM").[1] Defendant filed an Answer to the Amended Complaint on September 15, 2023. (Doc. 34). Discovery closed on May 23, 2024. (Doc. 43).

Defendant served its motion for summary judgment pursuant to the briefing schedule set by the Court and filed, in accordance with the Court's Individual Practices, unredacted versions of their motion papers under seal and redacted versions available for public viewing. (Doc. 86; Doc. 87; Doc. 88; Doc. 89; Doc. 90, "Def. Br."; Doc. 91; Doc. 92, "56.1").[2] Plaintiff opposed Defendant's motion, and also filed, in accordance with the Court's Individual Practices, unredacted versions of their motion papers under seal and redacted versions available for public viewing.

---

[1] Plaintiff also sued LiteMirror, GMM, Inc. as a defendant. However, on June 28, 2023, Defendant notified the Court that Defendant LiteMirror, GMM, Inc. is a non-existent entity and thus the action should be dismissed as to such entity. (Doc. 19). Subsequently, on September 1, 2023, Plaintiff voluntarily dismissed the Amended Complaint without prejudice as to Defendant LiteMirror, GMM, Inc., which the Court so-ordered the same day. (Doc. 29; Doc. 30).

[2] Defendant's unopposed letter motion to seal (Doc. 85) is granted. The Court cites to the redacted versions of the motion papers that are available for public viewing access.

(Doc. 79, "Pl. Opp."; Doc. 80; Doc. 81; Doc. 82; Doc. 83).[3] Defendant's motion was fully briefed with the filing of reply papers (Doc. 93, "Reply Br"; Doc. 94; Doc. 96; Doc. 97).[4] By Order dated March 18, 2025, the Court denied the parties' respective applications for oral argument on the instant motion. (Doc. 98).

For the reasons set forth below, Defendant's motion for summary judgment is DENIED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, the Rule 56.1 Statement and responses thereto (Doc. 92, "56.1"),[5] and the admissible exhibits proffered on this motion. Unless otherwise indicated, the facts cited herein are undisputed.

Prior to the formation of Plaintiff's and Defendant's respective companies, Mirrorlite Mirror and GMM, Gary Reith ("Reith"), his wife, Janet Reith ("Janet Reith"), Richard Powers ("Powers"), and Benito Repollet ("Repollet"), all worked together for Hudson Photographic Industries, Inc., d/b/a Mirrorlite Products, Inc ("Mirrorlite Products"). (56.1 ¶ 1). Mirrorlite Products was in the business of manufacturing glassless mirrors under the trademark MIRRORLITE until February 2007, when it filed for bankruptcy and closed. (*Id.* ¶¶ 2-3). Reith and his brother, Dwayne Reith, formed the company that would eventually become Mirrorlite Mirror in March, 2007 under the company name Hudson Mirror LLC. (56.1 ¶ 4). Plaintiff filed the

---

[3] Likewise, Plaintiff's unopposed letter motion to seal (Doc. 78) is granted. The Court cites to the redacted versions of the motion papers that are available for public viewing access.

[4] The Court cites to the redacted versions of the papers filed in reply that are available for public viewing access.

[5] Plaintiff combined their Rule 56.1(b) response and "Plaintiff's Statement of Facts and Defendant's Responses" into one document, setting forth additional material facts in numbered paragraphs beginning again at number one. The Court hereafter refers to the first section of the document as "56.1" (Doc. 92 at 1-19) and the second section as "Pl. 56.1" (*id.* at 19-26).

MIRRORLITE trademark on December 23, 2008, and it was registered on January 18, 2011. (Doc. 91-36, "Exhibit 67"). The trademark registration details a "First Use" date of August 4, 2008. (*Id.*). Hudson Mirror LLC changed its name in 2011 to Mirrorlite Mirror, Inc. (56.1 ¶ 21). Both Dwayne Reith and Stephanie Rodriguez ("Rodriguez") worked for Hudson Mirror LLC at or around its inception in 2007. (Doc. 91-5, "Dwayne Reith Tr." at 27:6-29:20; Doc. 91-4, "Rodriguez Tr." at 31:7-11). Additionally, Janet Reith was employed by Hudson Mirror LLC from June 2007 through its name change to Mirrorlite Mirror, Inc. in 2011; and continuously through to the present. After Gary Reith passed away in 2019, Janet Reith became and is currently the owner and president of Mirrorlite Mirror, along with vice-president Dwayne Reith. (Doc. 91-2, "Janet Reith Tr." at 17:22-24, 19:5-16, 23:9-24:13; 56.1 ¶ 2).

Powers and Repollet were employed by Hudson Mirror LLC from March 2007 until their resignation on or about the first week of August 2008, at which time they formed GMM. (*Id.* ¶ 5; Doc. 91-1, "Repollet Tr." at 15:5-22). GMM was incorporated on July 31, 2008, and moved into its manufacturing facility on August 8, 2008. (56.1 ¶¶ 6-7). GMM, Hudson Mirror LLC, and eventually Mirrorlite Mirror, all functioned primarily in the business of manufacturing glassless mirrors. (*Id.* ¶¶ 8, 50, 51). While it is undisputed that Defendant took its first order on August 15, 2008, Defendant claims that such sale was made under the "LITEMIRROR" mark—a fact which Plaintiff disputes. (*Id.* ¶¶ 9-11). GMM's current website is located at www.litemirror.com and was registered by Repollet on July 16, 2008. (*Id.* ¶¶ 11, 57).

Defendant had notice of Plaintiff's use of the MIRRORLITE trademark as of January 26, 2009, upon receipt of a letter from Plaintiff's then-intellectual property counsel to Defendant directing that Defendant "cease any use of the MIRRRORLITE trademark." (Doc. 91-20, "Exhibit 24"). However, the parties dispute whether Defendant was first aware of Plaintiff's use of the

3

MIRRORLITE mark earlier than January 2009, *i.e.*, during the time Powers and Repollet worked for Hudson Mirror LLC between March 2007 and August 2008. (56.1 ¶¶ 58, 60-61, 67-68, Pl. 56.1 ¶¶ 14, 16). Similarly, the parties dispute when and to what extent Plaintiff was aware of Defendant's use of the LITEMIRROR mark. Plaintiff claims it was not aware of Defendant's use of LITEMIRROR as a trademark for its glassless mirrors until "sometime after 2017." (Pl. 56.1 ¶ 3). Specifically, Plaintiff alleges it was not aware of the use until Defendant made changes to its website between 2017 and 2020, resulting in "LiteMirror" being featured more prominently in the header of the website. (Pl. 56.1 ¶¶ 2-5). Defendant argues however, that Plaintiff was aware of the Defendant's use of LITEMIRROR as a trademark as early as 2009, when Plaintiff was aware of Defendant's use of "litemirror.com" as its website domain. (56.1 ¶¶ 25-26, 29).

Plaintiff filed the instant trademark infringement lawsuit against Defendant in April 2023. Defendant now seeks summary judgment dismissing Plaintiff's Amended Complaint based solely on the affirmative defense of laches.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[6] "'Factual disputes that are irrelevant or unnecessary' are

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. *Porter v. Dartmouth-Hitchcock Med. Ctr.*, No. 92 F.4th 129, 147 (2d Cir. 2024) ("[T]he court may not make credibility determinations or weigh the evidence." (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010))). The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Further, "while the court is required to review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Porter*, 92 F.4th at 147 (quoting *Kaytor*, 609 F.3d at 545). Once the movant has met its burden, the non-movant

5

"must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

I. <u>Affirmative Defense – Laches</u>

Defendant moves for summary judgment based entirely on its second affirmative defense of laches, arguing that all of Plaintiff's claims against it are barred by this doctrine. (Def. Br. at 4-24).

Laches is an equitable doctrine that "bars a Plaintiff's claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Eppendorf-*

*Netheler-Hinz GMBH v. Nat'l Sci. Supply Co., Inc.*, 14 F. App'x 102, 105 (2d Cir. 2001). To establish the laches defense itself, a defendant must show: "(1) that plaintiff had knowledge of defendant's use of its marks," (2) "that plaintiff inexcusably delayed in taking action with respect thereto," and (3) "that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time." *Borghese Trademarks Inc. v. Borghese*, No. 10-CV-05552, 2013 WL 143807, at *8 (S.D.N.Y. Jan. 14, 2013) (citing *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980) (internal citations omitted)). Further, when the delay is longer than the analogous statute of limitations, which the parties agree here is six years, "a presumption of laches will apply," shifting the burden of production to Plaintiff to "show why the laches defense ought not to be applied in the case." *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996).

Before reaching the burden of proof proper on the laches defense, however, the defendant-movant must first establish a threshold good faith component to the laches doctrine, as the "party invoking laches [must] come to court with clean hands." *Cesari S.r.L. v. Peju Province Winery L.P.*, No. 17-CV-00873, 2022 WL 3082960, at *12 (S.D.N.Y. Aug. 3, 2022). "Clean hands" is the "fundamental principle" referred to in the case law as the "good-faith component of the laches doctrine." *Hermès Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000). It is the Defendant's burden to show such good faith. *Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.*, 457 F. Supp. 1090, 1098-99 (S.D.N.Y. 1978) ("[I]n asserting the defense of [laches] the defendant should be required to establish his own good faith."). It is also equally clear that "[t]he [defendant's] good faith presents a 'dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities.'" *Vaad L'Hafotzas Sichos, Inc. v. Kehot Publication Soc.*, 935 F. Supp. 2d 595, 602-603 (E.D.N.Y. 2013) (citing *Hermès Int'l*, 219 F.3d at 107) (holding that "if the factfinder were to find that [movant] acted in

7

bad faith, its laches defense would fall out of the picture").[7] Good faith may be demonstrated in the first instance by the showing of an absence of knowledge of the senior user's mark. *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005) (holding that the Second Circuit "has never held adoption of a mark with no knowledge of a prior similar mark to be in bad faith," and pointing to the "selection of a mark that reflects the product's characteristics" as additional support in favor of a good faith finding). However, while "bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark, . . . a junior user's knowledge of the mark may still be consistent with good faith unless the evidence indicates 'an intent to promote confusion or exploit good will or reputation." *Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, No. 06-3508-CV, 2007 WL 2914452, at *3-4 (2d Cir. Oct. 5, 2007) (citing *Star Indus., Inc.*, 412 F.3d at 388). Therefore, in this regard, more than "mere knowledge" of the senior user's use of the mark is required, and a lack of good faith will be found "where the junior user 'intentionally traded off the senior user's name and protected products.'" *See RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 410 F. App'x 362, 366 (2d Cir. 2010).

Finally, while the laches doctrine can "serve as a complete defense to state and federal trademark infringement claims," and may be invoked at the summary judgment stage, it is

---

[7] Because Defendant argues the presumption of laches applies to this fact pattern, Defendant argues that the burden is on Plaintiff to show Defendant's bad faith—as opposed to a defendant's burden to show its own good faith. (Def. Br. at 14-15). Defendant cites to a non-binding Northern District of New York case, *Harley-Davidson, Inc. v. O'Connell*, 13 F. Supp. 2d 271, 284 (N.D.N.Y. 1998), and acknowledges that the law is "not settled" on whether a presumption of laches creates a presumption of good faith. Even the cited case states that "it is possible that the element of 'good faith' should be reviewed outside the presumption of laches," as "[l]ogically, the likelihood of inexcusable delay and prejudice increases with time; by contrast, a bad faith infringer does not gain a patina of good faith merely by infringing for an extended period." *Id.* Defendant's reliance on this non-binding case does not alter the Court's analysis. Additionally, case law is clear that the burden of proof concerning Defendant's good faith belongs to the Defendant. *See Cuban Cigar Brands N.V.*, 457 F. Supp. at 1098-99. Of course, Plaintiff has a burden of production, should it choose to engage, to refute Defendant's good faith showing.

8

well-settled that "a laches defense 'usually requires the kind of record only created by full trial on the merits." *Borghese Trademarks Inc.*, 2013 WL 143807, at *7. As the Second Circuit has "consistently observed . . . subjective issues such as good faith are singularly inappropriate for determination on summary judgment." *Riseandshine Corp. v. PepsiCo. Inc.*, No. 21-CV-06324, 2023 WL 4936000, at *10 (S.D.N.Y. Aug. 2, 2023) (citing *Tiffany and Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 88 (2d Cir. 2020)).

Viewing the facts in the light most favorable to the non-moving party and resolving factual ambiguities in its favor, a genuine dispute of material fact exists as to the threshold issue that must be resolved before the Court can reach the merits of Defendant's laches defense: whether Defendant has asserted the laches defense "with clean hands." *PRL USA Holdings, Inc. v. M&A Marketing Corp.*, No. 99-CV-10199, 2004 WL 1737831, at *11 (S.D.N.Y. Aug. 2, 2004). Specifically, the Court finds that summary judgment is not warranted on this record as there are genuine issues of material facts as to: a) Defendant's knowledge of the Plaintiff's use of the MIRRORLITE mark prior to Defendant's adoption and use of the LITEMIRROR mark; and b) whether Defendant intended to "promote confusion" in the marketplace or "exploit [the] good will or reputation" of Plaintiff. These two issues will be analyzed *seriatim*.

    a. <u>Knowledge of the MIRRORLITE Mark</u>

Defendant alleges that it acted in good faith when it organized as Glassless Mirror Manufacturers, Inc. Specifically, Defendant claims it adopted the LITEMIRROR trademark to brand its glassless mirror products based on the idea that glassless mirrors were "lightweight mirrors," *i.e.*, "lite" mirrors, not because of Defendant's use of the MIRRORLITE mark. (Def. Br. at 15; 56.1 ¶ 58; Repollet Tr. at 19:4-24). Repollet and Powers, testifying as 30(b)(6) witnesses for Defendant, both claim that they were not aware that Hudson Mirror LLC was utilizing the

9

MIRRORLITE mark while they were employed there from March 2007 to August 2008. (Repollet Tr. at 18:10-24; Doc. 91-3, "Powers Tr." at 31:25-32:8). Rather, Repollet and Powers testified that they associated MIRRORLITE with the then-defunct Mirrorlite Products, not Hudson Mirror LLC. (Doc. 91-33, "Cont. Repollet Tr." at 61:19-62:11; Powers Tr. at 101:6-19). Here, Defendant's testimony is not "so problematic that no reasonable juror could credit it." *Frost v. New York City Police Dep't*, 980 F.3d 231, 246 (2d Cir. 2020) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)). This testimony is corroborated by the additional facts that Plaintiff's MIRRORLITE trademark registration was not registered until January 2011, detailing a "First Use" date of August 4, 2008 (*see* Exhibit 67), and Plaintiff did not change the name of its company to Mirrorlite Mirror, Inc. until 2011 (56.1 ¶ 21).

      Plaintiff, in response to Defendant's evidence, points to its own 30(b)(1) and 30(b)(6) witnesses to allege that in fact Hudson Mirror LLC did utilize the MIRRORLITE mark since its inception and through the time period that Repollet and Powers worked at the company. (Janet Reith Tr. at 48:23-49:15; Rodriguez Tr. at 16:8-15). Specifically, Janet Reith, Dwayne Reith, and Stephanie Rodriguez, who worked at Hudson Mirror LLC during the 2007-2008 time period, all testified that labels with the term "MIRRORLITE" were affixed to every mirror that was manufactured and sold. (*Id.*; *see also* Rodriguez Tr. at 30:4-32:5; Dwayne Reith Tr. at 41:21-43:11). Plaintiff also points to a photo of a document that purports to be an example of one of these labels. (Doc. 82-3, "Exhibit H"). Though it is dated "2010," Janet Reith testified that this label was of the same type as those she would affix herself to the backs of mirrors during the 2007-2008 time period, calling into question the credibility of Repollet and Power's contrary testimony that the MIRRORLITE mark was never used during that time period. (Janet Reith Tr. at 55:5-58:20). Dwayne Reith had similar testimony. (Dwayne Reith Tr. at 42:1-43:11). It is well-settled that

"[w]here the evidence presents a question of 'he said, she said,' the court cannot take a side at the summary judgment stage." *Roches-Bowman v. Evans*, 749 F. Supp. 3d 479, 486 (S.D.N.Y. 2024). On this record, the Court may not and will not engage in such "he said, she said" evidentiary conflict and credibility resolutions.

Thus, viewing the facts in the light most favorable to Plaintiff and resolving factual ambiguities in its favor, the record evidence raises genuine issues of material fact concerning Defendant's knowledge of and Plaintiff's use of the MIRRORLITE mark prior to Defendant's adoption of the LITEMIRROR mark that are not suitable to resolution at summary judgment.

      b.   Intent to Promote Confusion

Similarly, the record evidence also points to a genuine disputed issue of material fact concerning whether Defendant "inten[ded] to promote confusion" in the marketplace by its use of the LITEMIRROR mark. *Black Diamond Sportswear, Inc.*, 2007 WL 2914452, at *3-4. Here too, where the Court must "look at the junior user's intent" (Def. Br. at 17), on this record, the Court cannot divine Defendant's intent without impermissibly assuming the role of the factfinder.

It is undisputed that between approximately October 2008 and September 2020, Defendant registered multiple domain names that included Plaintiff's MIRRORLITE trademark. (56.1 ¶¶ 59, Pl. 56.1 ¶ 17). Defendant urges that only one of these domains, "mirrorliteproducts.com," registered by Repollet in March 2009, was ever active or linked to Defendant's actual website, "litemirror.com." (*Id.* ¶ 59). When questioned about this particular domain at his deposition, Repollet initially testified that he registered this domain based on his previous work for the bankrupt Mirrorlite Products with the hope that it would bring customers in from the previous company. (*Id.* ¶ 60). Yet, on the other hand, Powers, Defendant's other 30(b)(6) witness, testified that Defendant never used the term MIRRORLITE as a trademark in connection with its business,

and "it did not want to be associated with the bankrupt company Mirrorlite Products, Inc." (*Id.* ¶¶ 69-70; Powers Tr. at 100:15-101:23; Doc. 91-10). Defendant cannot have it both ways: either it kept the allegedly infringing domain active and linked to its website to pull in customers from the bankrupt company, or it wanted nothing to do with and did not even want to be associated with Mirrorlite Products. The Court cannot at this juncture resolve this conflicting testimony as it involves credibility determinations.

Further, as Plaintiff notes, "mirrorliteproducts.com" remained linked to Defendant's website into 2023, long after January 2009, the undisputed date by which Defendant was on notice of Plaintiff's use of the MIRRORLITE mark. (Pl. Opp. at 6-7; 56.1 ¶ 59). Therefore, on this record, while Defendant may have a colorable claim that it registered at least the one domain, "mirrorliteproducts.com" in good faith originally back in 2009, the Court cannot rule out the alternative theory that Defendant intentionally kept this domain linked through 2023 in order to confuse and re-direct prospective Mirrorlite Mirror customers to Defendant's website (*see, e.g.*, Pl. Opp. at 6-8; *see also* Cont. Repollet Tr. at 102:21-103:8 (questioning Repollet as to Powers' testimony that Repollet would "giggle" while registering new domain names that included Plaintiff's trademark)). *Vaad L'Hafotzas Sichos, Inc.*, 935 F. Supp. 2d at 602-603. Therefore, at the very least, there exists a disputed issue of fact as to Defendant's intent, requiring credibility determinations that the Court will not make on a summary judgment motion. *See Porter*, 92 F.4th at 147.

Accordingly, Defendant's motion for summary judgment dismissing the Amended Complaint on the affirmative defense of laches is denied because there are genuine issues of material fact associated with the required threshold determination of Defendant's good faith.[8]

---

[8] The Court recognizes and has considered the additional arguments and evidence offered by the parties on the threshold issue of Defendant's "clean hands," but need not specifically address them (or the proof

**CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment (Doc. 86) is DENIED. Plaintiff's and Defendant's respective motions to seal (Doc. 78; Doc. 85) are GRANTED, such that the unredacted versions of the motion papers shall remain under seal (Doc. 81; Doc. 83; Doc. 87; Doc. 88; Doc. 89; Doc. 94; Doc. 96), and the redacted versions shall remain the publicly-filed versions (Doc. 80; Doc. 82; Doc. 90; Doc. 91; Doc. 92; Doc. 97).

The claims for relief alleged in Plaintiff's Amended Complaint against Defendant shall proceed to a non-jury trial. The parties shall, by October 27, 2025, prepare and submit those materials required by Rules 6(A), 6(B), and 6(D) of this Court's Individual Practices.

The Clerk of Court is respectfully requested to terminate the pending motions (Doc. 78; Doc. 85; Doc. 86).

SO ORDERED:

Dated: White Plains, New York
       September 23, 2025

_____
Philip M. Halpern
United States District Judge

---

associated therewith) given the discussion herein. (*See* Def. Br. at 16-18; Pl. Opp. at 7-8; Def. Reply at 4-5). None of those arguments or proof would disturb the finding of genuine issues of material fact concerning Defendant's good faith. Moreover, given the conclusions reached herein, the Court need not and does not reach the parties' remaining arguments as to the merits of the laches defense. (*See* Def. Br. at 4-14, 18-25; Pl. Opp. 9-25; Def. Reply at 5-10).